IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RABEYA SULTANA, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:21-CV-1219-BK |
| | § | |
| MD SAFAYET HOSSAIN, | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION**

Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned magistrate judge, this matter is before the Court on Plaintiff's *Motion for Summary Judgment*, Doc. 56. Upon consideration, Plaintiff's motion is **GRANTED**.

**I.   BACKGROUND**

The Immigration and Nationality Act ("INA") prohibits the immigration of persons into this country who are determined likely to become a public charge at any time. 8 U.S.C. § 1182(a)(4)(A). As part of this statutory framework, Congress created Form I-864, which includes an Affidavit of Support ("Affidavit"). Under the terms of the Affidavit, a United States citizen who chooses to sponsor an immigrant agrees to provide the immigrant with "any support necessary" to maintain the immigrant at an income of at least 125 percent of the poverty line for the immigrant's household size. *See* Form I-864, Affidavit of Support Under Section 213A of the INA, Part 8 (2018), *available at* https://www.uscis.gov/i-864 (last visited Sept. 6, 2022). Federal courts recognize that the purpose of Form I-864 is to prevent sponsored immigrants from becoming dependent on taxpayers for support. *See, e.g.*, *Liu v. Mund*, 686 F.3d 418, 422 (7th Cir. 2012).

## II. PROCEDURAL HISTORY

Plaintiff initiated this action in May 2021 alleging that Defendant, her former husband, had signed an Affidavit on her behalf, but was not providing the promised financial support. Doc. 1 at 2, 8-10.  Accordingly, Plaintiff sued Defendant for breach of contract, an order of specific performance requiring him to make the required payments, and attorneys' fees and costs. Doc. 1 at 12-14.  Plaintiff also moved for an injunction to compel Defendant to honor the Affidavit inasmuch as she was essentially living in poverty, although her brother housed her, and Defendant had made some intermittent child support payments.  Doc. 19; Doc. 20 at 19-28.

Following an evidentiary hearing, the undersigned granted Plaintiff's motion for preliminary injunctive relief.  Doc. 40; Doc. 41; *see Sultana v. Hossain*, 575 F. Supp. 3d 696, 700 (N.D. Tex. 2021).  By the terms of the injunction, the *pro se* Defendant was ordered to (1) make the required monthly financial payments to Plaintiff in the amount of 125 percent of the federal poverty guideline for a household of one (currently $1,342.00); (2) transmit such monthly payments to Plaintiff's counsel on the first business day of each calendar month no later than January 1, 2022; and (3) continue making payments until the case was resolved.  Doc. 41 at 5-6.

When Defendant failed to make his first support payment, Plaintiff moved for civil contempt sanctions.  Doc. 45.  The Court granted Plaintiff's motion, held Defendant in civil contempt of court, and ordered that he be incarcerated until he purged himself of his contempt by delivering to Plaintiff's counsel the total arrearage for the missed monthly payments.  Doc. 59 at 7-8.  In the meantime, Plaintiff filed the instant *Motion for Summary Judgment*, Doc. 56, to which Defendant has responded, Doc. 62.

2

**III.   APPLICABLE LAW**

    *A.  Summary Judgment*

Summary judgment will be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

    *2.  Affidavit of Support*

As noted above, under the INA, a citizen may sponsor a prospective immigrant by executing an Affidavit "to establish that [the] alien is not excludable as a public charge" and not likely to rely on the federal government for financial support. 8 U.S.C. § 1183a(a). By its terms, the Affidavit is "a contract" by which the sponsor agrees to provide the required support to the immigrant for so long as the Affidavit is enforceable. *Id.* at § 1183a(a)(1) ("No affidavit of support may be accepted by the Attorney General . . . unless such affidavit is executed by a sponsor of the alien as a contract[.]"). To that end, the sponsored immigrant has a private right of action to enforce the Affidavit. *See also* 8 U.S.C. § 1183a(a)(1)(B) (permitting private cause

of action to be filed by the sponsored alien, the federal government, any state or political subdivision thereof, or "any other entity that provides any means-tested public benefit").

## IV. ANALYSIS

### A. Breach of Contract

Plaintiff argues in support of her summary judgment motion that the Affidavit constitutes a binding contract between the federal government and Defendant, and the government satisfied its obligations by granting Plaintiff a visa. Doc. 57 at 10-12. She maintains, however, that Defendant breached his duties under the Affidavit by failing to pay the required support, and she can enforce the Affidavit as a third-party beneficiary. Doc. 57 at 3, 13. Plaintiff contends that she has suffered damages in the amount of $65,647.06 from February 2018, when she moved out of the parties' home, through March 31, 2022. Doc. 57 at 13-14.

Defendant responds that Plaintiff's summary judgment motion is premature because discovery is not complete, presumably because Plaintiff has not provided a copy of her passport proving her residence in either the United States or Bangladesh. Doc. 62 at 2-3, 5. Additionally, Defendant contends Plaintiff (1) has not acted in good faith in attempting to mitigate her damages by obtaining employment despite having a degree in medicine, and (2) breached her obligations under the Affidavit by leaving the United States and declaring to a Bangladeshi court that she would remain there permanently. Doc. 62 at 4, 8-9. Finally, Defendant asserts, without elaboration, that Plaintiff has not clearly established her claimed damages. Doc. 62 at 9. He attaches to his response (1) an Affidavit of Divorce Plaintiff purportedly signed in connection with her Bangladeshi divorce proceedings against Defendant and (2) an Internal Revenue Service tax return transcript indicating he had zero earnings in the tax period ending December 31, 2021. Doc. 62 at 13-19.

4

None of Defendant's arguments have merit. First, an Affidavit sponsor's obligation terminates only if, *inter alia*, the sponsored immigrant "[c]eases to hold the status of an alien lawfully admitted for permanent residence and departs the United States." 8 C.F.R. 213a.2(e)(2)(i)(C). While Plaintiff left the United States to return to Bangladesh at some point, there is no evidence to suggest she forfeited her permanent resident status. In fact, Plaintiff avers she and her son have had permanent residence status since being admitted to the United States in February 2017. Doc. 58 at 36 (Plaintiff Affid.); Doc. 58 at 200 (Plaintiff's permanent resident card with expiration date of Feb. 20, 2027).

Defendant's mitigation argument is effectively an affirmative defense. *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012). While that defense is commonly asserted in breach of contract cases, the breach of an Affidavit is a different matter. Indeed, many courts have held that traditional contract defenses do not apply in this type of case. *See Belevich v. Thomas*, 17 F.4th 1048, 1050-51 (11th Cir. 2021) (holding that affirmative defenses of unclean hands, anticipatory breach, and equitable estoppel were not available to sponsors under the Affidavit), *cert. denied*, 142 S. Ct. 2754 (2022); *Liu*, 686 F.3d at 422-23 (rejecting argument that Affidavit imposes on sponsored immigrant a duty to mitigate damages); *Asilonu v. Asilonu*, 550 F. Supp. 3d 282, 293 (M.D. N.C. 2021) (holding that in enforcing an Affidavit, traditional contract defenses such as fraud and failure to mitigate do not apply); *Liu v. Kell*, 299 F. Supp. 3d 1128, 1133 (W.D. Wash. 2017) (finding that immigrant's failure to mitigate defense is impermissible as a matter of law even if immigrant willfully failed to seek employment); *Allen v. Goard*, No. 14-61147-CIV, 2014 WL 11776965, at *3 (S.D. Fla. Sept. 5, 2014) ("There are no provisions requiring—or even suggesting—that an immigrant has a duty to find work or a duty to otherwise mitigate the sponsor's financial obligations."); *cf. Younis v. Farooqi*, 597 F. Supp.

2d 552, 556-57 n.5 (D. Md. 2009) (assuming *arguendo* that immigrant had duty to mitigate damages, but noting even unwillingness to work might not relieve sponsor of liability in light of the Affidavit's purpose to ensure immigrants do not become a public charge).

Additionally, Plaintiff's alleged misrepresentations during her divorce proceedings are irrelevant. *See Erler v. Erler*, 824 F.3d 1173, 1777 (9th Cir. 2016) ("…under federal law, neither a divorce judgment nor a premarital agreement may terminate an obligation of support."); *Backman v. Backman*, 875 S.E.2d 510, 515 (Ga. Ct. App. 2022) ("[A] sponsor's obligation to support a sponsored immigrant pursuant to an I-864 Affidavit of Support is not terminated by either a prenuptial agreement or the parties' divorce under . . . state law."); *Skorychenko v. Tompkins*, No. 08-CV-626-BBC, 2009 WL 3126379, at *3 (W.D. Wis. Sept. 28, 2009) (finding defendant liable under Affidavit despite contention that "plaintiff fraudulently induced him into signing the I–864 form with a promise of marriage she had no intention of carrying out" because he "produced no admissible evidence of fraud"). Plaintiff has thus demonstrated her entitlement to entry of summary judgment in her favor.

    *B. Damages*

The measure of damages is determined by the difference between Plaintiff's annual income and 125 percent of the poverty line. 8 U.S.C. § 1183a(a)(1). Because Plaintiff has been unemployed since becoming a United States resident, her damages are equal to 125 percent of the poverty line for a household of one in effect in the contiguous 48 states, since she physically separated from Defendant in February 2018. Doc. 57 at 4; *see Sultana*, 575 F. Supp. 3d at 699 n.1 ("The Court determines that it is appropriate to calculate damages based on a household size of one. Plaintiff has conceded that Defendant is providing $400.00 per month in child support to the parties' minor son."). Moreover, Defendant's alleged inability to make the required

payments is immaterial. *See Cheshire v. Cheshire*, 3:05-CV-00453-TJC-MCR, 2006 WL 1208010, at *7 (M.D. Fla. May 4, 2006) (finding that defendant's inability to pay as obligated under Affidavit had no bearing on liability).

During the timeframe relevant to this case, the poverty guidelines were (1) $12,140 in 2018, (2) $12,490 in 2019, (3) $12,760 in 2020, (4) $12,880 in 2021, and (5) $13,590 in 2022. *Prior HHS Poverty Guidelines and Federal Register References*, OFF. OF THE ASSISTANT SEC'Y FOR PLAN. & EVALUATION, https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references (last visited Aug. 31, 2022). 125 percent of the applicable rates equals (1) $15,175 in 2018, (2) $15,612 in 2019, (3) $15,950 in 2020, (4) $16,100 in 2021, and (5) $16,987.50 in 2022. Based on the undisputed calculation of damages as set forth in Plaintiff's memorandum of law, Doc. 57 at 14, the Court renders judgment on Plaintiff's behalf in the sum of $65,647.06 plus an additional $46.54 per diem for the period from April 1, 2022, until the date on which Defendant pays the entirety of the required sum.[1]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 56, is **GRANTED**. As Plaintiff reserves the right to move for an award of reasonable attorney's fees and costs, Doc. 57 at 16, her prior *Motion for Attorney's Fees*, Doc. 42, is **TERMINATED AS MOOT**. Plaintiff may file a renewed fee motion, supported by appropriate documentation,

---

[1] The damages awarded are in lieu of, and not in addition to, monies the Court previously ordered Defendant to pay in the Court's preliminary injunction order.

within 14 days of the date of this order.

**SO ORDERED** on September 8, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE